UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-341 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| WILLIAM JONES IV, | |
| Defendant. | |

Defendant William Jones IV is charged with second degree murder and assault resulting in substantial bodily injury. (ECF No. 31.) Jones moves to suppress evidence obtained pursuant to search warrants and statements he made to law enforcement officers. (ECF Nos. 41, 42.) In a January 7, 2021 Report and Recommendation, United States Magistrate Judge Leo I. Brisbois recommends that the Court deny both motions. (ECF No. 75 ("R&R") at 38.) Jones objects to the R&R. (ECF No. 78 ("Obj.").) For the reasons below, the Court accepts the R&R and denies Jones's motions.

## ANALYSIS

The R&R provides comprehensive factual background on this case. (R&R at 2–14.) As neither party objects to the R&R's account of the facts, the Court need not repeat the factual background here.

Jones objects to four of the R&R's conclusions: (1) Jones's November 13, 2019 statement was not elicited in a custodial interrogation; (2) Jones's November 23, 2019 statements were made voluntarily; (3) the warrant to search Jones's Facebook account was not unconstitutionally overbroad; and (4) the perceived "irregularities" with the warrants do not warrant suppression. (Obj. at 6–13.)

### I. Jones's November 13, 2019 Statements

After police visited Jones's residence on November 13, 2019, they took him to the police station for an interview. (R&R at 7–9.) In this interview, Jones admitted that he and the victim had been involved in a physical altercation, and that they both consumed alcohol and used methamphetamine in the days leading up to the incident. (*Id.* at 9.)

Statements made by a defendant during custodial interrogation must generally be suppressed unless law enforcement gave the defendant *Miranda* warnings. *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). The parties appear to agree that Jones was not Mirandized and that he made the statements while he was being interrogated. The only question, then, is whether Jones was in custody.

A defendant is considered to be in custody when he has been "deprived of his freedom of action in any significant manner." *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002). To determine whether a defendant was in custody, a court must ask "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States*

*v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (quotation omitted). The Eighth Circuit considers six factors for this analysis:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.* (quotation omitted) (alteration original).

Each factor supports the conclusion that Jones was not in custody when he made the November 13 statements. First, Jones knew that speaking to police was voluntary and that he was free to leave the interrogation at any time. Before taking Jones to the police station, FBI Special Agent Daniel Eckhardt told Jones that it was Jones's decision whether to speak with him. (ECF No. 72 ("Hr'g Tr.") at 20.) Once they arrived at the interview room at the police station, SA Eckhardt reiterated to Jones that speaking to him was voluntary. (*Id.*; Gov't Ex. 1 at 11:24:50–11:25:04.) Additionally, SA Eckhardt told Jones that he could leave the interview room whenever he wanted and that he could choose not to answer any of the questions. (Hr'g Tr. at 44–45; Gov't Ex. 1 at 11:24:55–11:25:03.) Specifically informing a suspect that he or she is free to end the encounter "provides an individual with a clear understanding of his or her rights and generally removes any

custodial trappings from the questioning." *United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (citation omitted).

Second, Jones possessed freedom of movement during the interrogation. Not only did SA Eckhardt tell Jones he could leave the interview room, but Jones was not physically restrained, and the interview took place in an unlocked interview room adjacent to the public lobby and entryway of the police station. (Hr'g Tr. at 21–22.) Third, as discussed above, Jones agreed to submit to police questioning. He knew that speaking to the police was optional, yet he chose to do so anyway.

The remaining three factors also suggest that the interrogation was not custodial. There is no evidence in the record that police engaged in any strong-arm tactics or deception. That the interrogation took place at a police station does not in itself establish that the interrogation took place in a police-dominated atmosphere. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("[A] noncustodial situation is not converted to one in which *Miranda* applies simply because . . . even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.'"). And police did not arrest Jones at the end of the interrogation. (*See* Hr'g Tr. at 26 (SA Eckhardt testifying that Jones left the police station after questioning).) Thus, all six factors establish that the November 13 interrogation was not custodial. As such, the officers were not required to Mirandize Jones.

Jones, in his objection, highlights a series of facts that he believes compel the opposite conclusion. (Obj. at 7–8.) But the facts that Jones highlights do not assist him. For instance, Jones notes that police arrived at his mother's house unannounced, but he does not explain why the officers' unannounced arrival would cause Jones to feel unable to end the encounter. (*Id.* at 7.) Jones also claims that he had "asked to end the encounter not ten minutes into the session." (*Id.* at 7–8.) Jones overstates his argument here. He did not ask to end the encounter, rather he asked the officers if that was it, and whether they had asked him everything they wanted to ask him.[1] (Gov't Ex. 1 at 11:34:12 AM). No coercive action followed; the officers continued asking Jones questions, and he continued to respond, still knowing that speaking with the officers was voluntary. The Court is unable and unwilling to draw the inferences Jones requests.[2]

---

[1] The objection itself acknowledges this. (*See* Obj. at 4 (citing Hr'g Tr. at 34–35) (" . . . Mr. Jones asked if they were 'done' within [ten] minutes.").)

[2] Jones also argues that the present facts are analogous to *Ollie*, 442 F.3d at 1138. (*Id.* at 8.) In *Ollie*, the court found that the interrogation was custodial because Ollie's parole officer ordered him to speak with the police. 442 F.3d at 1140. If Ollie had not met with police, it would have been considered a parole violation, and his parole could have been revoked. *Id.* at 1138. Jones did not face the same coercive pressures. He did not risk a parole violation, or any similar consequence, for not speaking with the officers. To the contrary, the officers informed him that Jones had a choice whether to speak with them.

## II.    Jones's November 23, 2019 Statements

On November 23, 2019, while transporting Jones from the Douglas County jail to the Beltrami County jail, Task Force Officer Mariano Arguedas questioned Jones. (R&R at 10–11.) There is no dispute that this was a custodial interrogation, nor is there a dispute that Officer Arguedas gave Jones his *Miranda* warnings. (*Id.* at 32–33.) The only issue, then, is whether Jones made the statements voluntarily.[3]

When a defendant has received *Miranda* warnings, he or she rarely succeeds on a voluntariness challenge to an incriminating statement. *United States v. Astello*, 241 F.3d 965, 966 (8th Cir. 2001) (citing *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)). To determine whether a defendant gave a statement voluntarily, a court must consider the totality of the circumstances, including "whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's 'will [was] overborne and his capacity for self-determination critically impaired.'" *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (alteration original, citation omitted). A court must consider the actions of the law enforcement officer as well as the defendant's capacity to resist pressure. *Id.*

The Court finds that this is not one of the rare cases in which the defendant's statement was involuntary despite having received *Miranda* warnings. *Astello*, 241 F.3d

---

[3] Jones does not object to the R&R's conclusion that he voluntarily, knowingly, and intelligently waived his *Miranda* rights. (R&R at 32–37.)

6

at 966. There is no indication in the record that police coerced Jones to make the statements through "threats, violence, or . . . promises" that would have been overbearing on Jones's will. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). When Jones told Officer Arguedas that he wished to stop talking, Officer Arguedas stopped questioning him. (Gov't Ex. 2 at 57:00–57:22; Hr'g Tr. at 66–67.) Jones argues that Judge Brisbois erred by only considering the audio recording of the interrogation and ignoring the context of the interrogation. (Obj. at 9.) He contends that the length of the trip, the fact that the questioning took place in an "isolated and incommunicado" location, and that Jones was restrained while being questioned suggest that he made the statements involuntarily. (*Id.*) But it is not clear how these circumstances would have caused Jones to lack the capacity for self-determination. Given that Jones received his *Miranda* warnings and eventually chose to assert his right to remain silent, the Court concludes that his statements to police were not involuntary.

Jones analogizes his case to two Supreme Court cases that held that defendants made statements involuntarily, (Obj. at 9–10), but neither case is analogous. In *Davis v. North Carolina*, law enforcement did not advise the defendant of his right to remain silent[4] and held him in isolation and interrogated him for over sixteen days. 384 U.S. 737, 739–41, 752 (1966). Officer Arguedas's questioning of Jones is not analogous; he advised Jones

---

[4] *Davis* preceded *Miranda v. Arizona*, 384 U.S. 436 (1966), but whether law enforcement advised the defendant of his right to remain silent and his right to counsel was still a "significant factor in considering the voluntariness of statements." *Davis*, 384 U.S. at 740.

of his right to remain silent, and Jones was "isolated," if at all, for a single, roughly three-hour trip. Jones also cites *Brewer v. Williams* for the proposition that courts often find statements made "in the course of transit" to be involuntary. (Obj. at 10); 430 U.S. 387 (1977). Although the defendant in *Brewer* was in transit when he made his statements, this fact did not factor into the Supreme Court's analysis. *Brewer*, 430 U.S. at 404–05. The Court sees no other reason why Jones being in transit would be relevant to the voluntariness of Jones's statements.

### III. Jones's Facebook Account Warrant

Jones argues that the Court must suppress information derived from a warrant authorizing the search of his Facebook account because the warrant was unconstitutionally overbroad. (Obj. at 10–12.) A search warrant must "describe particularly the place to be searched and items to be seized." *United States v. Gleich*, 397 F.3d 608, 611 (8th Cir. 2005) (citing U.S. Const. amend. IV). To satisfy this requirement, the warrant must describe the places to be searched and the items to be seized with enough particularity to "avoid mistakenly searching the wrong places or seizing the wrong items." *Id.* (citation omitted). The degree of particularity required depends on the facts of the case and the type of items involved. *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (citation omitted). Warrants identifying general classes of items are sufficiently particular if the specific goods to be seized could not be identified when the warrant was issued. *Id.* (citation omitted).

The warrant to search Jones's Facebook account was sufficiently particular. It identified specific categories of information to be searched and seized, and it permitted seizure of data from a relatively narrow time window. (Gov't Ex. 6, Attach. B.) Using general categories of information to search was permissible because officers could not have known *ex ante* what information they would find on Jones's Facebook account. Enumerating the categories of information to be searched allowed police to avoid searching the wrong items. *Gleich*, 397 F.3d at 612. Additionally, the warrant only permits officers to seize information that "constitutes fruits, evidence, and instrumentalities" of one of the charged offenses, and only for a fourteen-month period—the time during which Jones was allegedly romantically involved with the victim. (Gov't Ex. 6, Attach. B § II; *id.* Aff. ¶ 39.)

Contrary to Jones's argument, this case is distinguishable from *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536 (N.D. Iowa Feb. 6, 2020). Unlike in *Burkhow*, in which the warrant to search and seize information had no temporal limitations, here the warrant to seize information on Jones's Facebook account was temporally limited. (Gov't Ex. 6, Attach. B § II); 2020 WL 589536, at *7–8.

But even if the warrant to search Jones's Facebook account were overbroad, the evidence obtained pursuant to it should not be suppressed, because the officers acted in good faith. When an officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant," the evidence obtained under the warrant need not be

9

suppressed. *United States v. Leon*, 468 U.S. 897, 922 (1984). The warrant to search Jones's Facebook account did not "fail[] to particularize the place to be searched or the things to be seized" to a degree that would render it "so facially deficient . . . that the executing officers [could not have] reasonably presumed it to be valid." *Id.* at 923. To the contrary, the warrant enumerated the categories of information that were to be searched and limited the information to be seized to a certain period of time. (Gov't Ex. 6, Attach. B.)

### IV.     Warrant Irregularities

Finally, Jones contends that "irregularities" with the warrants "raise[] troubling and unanswered questions concerning the integrity of the warrant process." (Obj. at 12–13.) Jones notes that there are two versions of the warrant permitting a search of the victim's Facebook account: one that Officer Arguedas signed and another that he did not.[5] (*Id.*) And while Jones acknowledges that he lacks standing to challenge the search warrant for the victim's Facebook account, he imputes the irregularities in that warrant to the other warrants because Officer Arguedas used the same process to apply for all four warrants. (Obj. at 13.)

A warrant must be "supported by Oath or affirmation." U.S. Const. amend. IV. Jones cites no authority for the proposition that the officer-applicant must sign a

---

[5] Before Judge Brisbois, Jones's "irregularities" argument also stemmed from the fact that police reports show that, before the November 12, 2019 Search Warrant was issued, police seized at least one item from Jones's residence. (ECF No. 70 at 7–9; R&R at 20–21.) Jones chose not to pursue this argument further. (Obj. at 12 n.3.)

warrant—as opposed to the affidavit or oath supporting the warrant—for it to be valid. The First Circuit has held that the issuing judge need not sign a warrant, *United States v. Lyons*, 740 F.3d 702, 724–26 (1st Cir. 2014), and if the judge need not sign the warrant for it to be valid, the Court sees no reason to impose a requirement that the applicant-officer must sign it. The Tenth Circuit has also declined to do so, affirming a denial of a motion to suppress when the warrant applicant failed to sign the affidavit. *United States v. Williamson*, 859 F.3d 843, 864 (10th Cir. 2017). Like in *Williamson*, Officer Arguedas was under oath when he applied for the search warrant, and the Judge signed the warrant. (Hr'g Tr. at 84); *Williamson*, 859 F.3d at 864–65. Officer Arguedas also testified that he was truthful and did not make any misrepresentations in applying for the warrant. (Hr'g Tr. at 84.) Based on these facts, the Court rejects Jones's invitation to indulge in speculation about the cause of perceived "irregularities" in the warrant.

## V.     Remaining Aspects of the R&R

The Court has reviewed the remaining aspects of the R&R to which Jones has not specifically objected for clear error. *See* Fed. R. Crim. P. 59(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Finding no clear error in the parts not objected to and following a *de novo* review of the elements of the R&R to which Jones has objected, the Court accepts the R&Rs and denies Jones's motions to suppress.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Jones's objections (ECF No. 78) are OVERRULED;

2. The Report and Recommendation (ECF No. 75) is ACCEPTED; and

3. Defendant's motions to suppress (ECF Nos. 41, 42) are DENIED.


Dated: March 15, 2020                                   BY THE COURT:

                                                        s/Nancy E. Brasel
                                                        Nancy E. Brasel
                                                        United States District Judge